UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SPEISER, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| BRIGHTVIEW HOLDINGS, INC., ANDREW V. MASTERMAN, and JOHN A. FEENAN. | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff David Speiser ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BrightView Holdings, Inc. ("BrightView" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

{00321354;1 }

1

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all persons and entities other than Defendants who purchased BrightView common stock pursuant and/or traceable to the Company's initial public offering completed on or around July 2, 2018 (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). The claims in this action arise from the materially misleading Registration Statement and Prospectus (defined below) (collectively, the "Offering Documents") issued in connection with the IPO.

2.      BrightView was founded in 1939 and is headquartered in Plymouth Meeting, Pennsylvania.  The Company provides commercial landscaping services in the United States, operating through two segments, Maintenance Services and Development Services.

3.      The Maintenance Services segment delivers a suite of recurring commercial landscaping services, including mowing, gardening, mulching and snow removal, water management, irrigation maintenance, tree care, golf course maintenance, and specialty turf maintenance.   It serves corporate campuses and commercial properties, homeowners' associations, public parks, international hotels and resorts, airport authorities, municipalities, hospitals and other healthcare facilities, educational institutions, restaurants and retail, golf courses, and others.  This segment's customer base includes approximately 13,000 office parks and corporate campuses, 9,000 residential communities, and 450 educational institutions.

4.      The Development Services segment offers landscape architecture and development services for new facilities and redesign projects.  Its services include project design

and management services, landscape architecture, landscape installation, irrigation installation, tree nursery and installation, pool and water features, sports field, and other services.

5.      On July 2, 2018, BrightView completed its IPO, in which the Company issued and sold 24,495,000 shares of common stock at an offering price of $22.00 per share, generating net proceeds of approximately $501.2 million after deducting underwriting discounts and commissions and other offering expenses.  The shares sold in the offering were registered under the Securities Act pursuant to the Company's Registration Statement on Form S-1 (File No. 333-225277) (the "Registration Statement"), which was declared effective by the SEC on June 27, 2018.  Pursuant to Rule 424(b)(4) under the Securities Act, BrightView additionally filed its final prospectus dated June 27, 2018 on Form 424B4 with the SEC on June 29, 2018, which provided material information concerning the Company in connection with the IPO (the "Prospectus").

6.        Defendants made materially false and misleading statements in the Offering Documents concerning the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a material portion of BrightView's contracts were underperforming and/or represented undesirable costs to the Company; (ii) as a result of the foregoing, BrightView would implement a "managed exit" strategy to end its low margin and non-profitable contracts with customers; (iii) this "managed exit" strategy would negatively impact BrightView's future revenue throughout 2018, and would continue to do so well into fiscal year 2019; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

7.      On August 8, 2018, after market-close, BrightView issued a press release announcing its financial and operating results for the third quarter of 2018, ended June 30, 2018.

{00321354;1 }

3

Despite reporting "strong third quarter results" and "record revenues," the Company reported that "[r]evenues from the Development Services segment declined 5.7%" compared to the prior year "due to winding down production on certain large projects that reached substantial completion during the quarter, coupled with the timing of commencing work on new projects."

8.      The following day, on August 9, 2018, BrightView filed its quarterly report for the same period with the SEC, reiterating the results previously announced in its earlier press release. Therein, the Company disclosed that its Maintenance Services revenue was negatively impacted by its "Managed Exit" strategy. The Managed Exit strategy was BrightView's purported corporate strategy to allow certain "***underperforming contacts***" to expire upon maturity or renegotiate the contracts to provide the Company with more favorable terms. Critically, this was the first time the Company disclosed that it held "underperforming" customer contracts.

9.      On this news, BrightView's common stock price fell $2.30 per share, or over 10%, to close at $19.90 per share on August 9, 2018, on exceptionally heavy trading volume. This represented a decrease of nearly 10% from the IPO price. BrightView's common stock price continued to fall by an additional $3.53 per share over the following three trading sessions to close at a low of $16.37 per share on August 14, 2018, or approximately 25.6% below the IPO price.

10.      The extent of the Company's "underperforming contracts" was further revealed on November 27, 2018, when BrightView issued a press release reporting its financial and operating results for the fourth quarter and fiscal year 2018. Therein, the Company revealed that for the fourth quarter and full year, its Managed Exit strategy offset its Maintenance Services revenue by 2.6% and 1.6%, respectively. Additionally, BrightView disclosed that its Managed Exit strategy would result in a decline in revenue of $15 to $25 million over the course of full year fiscal 2019.

{00321354;1 }

11.     The following day, BrightView filed its annual report for the fiscal year ended September 30, 2018 with the SEC, reiterating the financial and operating results reported in its earlier press release.  The Company elaborated on the extent of its underperforming contracts, disclosing that Net Service revenues for the twelve months ended September 30, 2018 of $2,353.6 million, were negatively impacted "by a $23.1 million decrease as a result of the Company's managed exit strategy surrounding underperforming contracts ('Managed Exits')."

12.     On November 28, 2018, BrightView also hosted a conference call with investors and analysts to discuss the Company's financial and operating results.  On that call, BrightView's Chief Executive Officer ("CEO") Andrew V. Masterman ("Masterman") disclosed that certain of the Company's contracts not only had "no margin," but in fact were "under water."

13.     Then, on February 7, 2019, BrightView issued a press release announcing its financial and operating results for the first quarter 2019, ended December 31, 2018.  In the press release, Defendant Masterman attributed the Company's disappointing financial and operating results to, *inter alia*, the Company's "strategic Managed Exit initiative and other operating conditions that we highlighted in our guidance on our November 2018 earnings conference call, as well as a slow start to the season for our snow removal services."   Additionally, in the Company's quarterly report filed with the SEC that same day, the Company advised investors that the underperforming contracts part of the Managed Exit strategy accounted for a year-over-year quarterly decline of $10.8 million in landscape services revenues.

14.     Later that day, on February 7, 2019, the Company held an earnings conference call with investors and analysts.  On that call, Defendant Masterman warned investors that Company's underperforming contracts comprising its Managed Exit strategy accounted for a

$23.1 million drop in revenue for full year fiscal 2018, and the company expected a loss in revenue of over $25 million for 2019.

15.    On this news, BrightView's common stock price declined $1.51 per share, or over 10%, to close at $13.23 per share on February 7, 2019, representing a decline of nearly 40% from the IPO price.  The price of BrightView's common stock continued to fall by an additional $0.48 per share, or 3.6%, to close at a low of $12.75 per share on February 8, 2019, representing a total decline of 42% from the IPO price.

16.    As of the date of this Complaint, BrightView's common stock price has fallen approximately 32.8% below the IPO price.

17.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of BrightView's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

18.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

19.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

20.    Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b). BrightView is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

21.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

22.     Plaintiff, as set forth in the attached Certification, acquired BrightView common stock at artificially inflated prices pursuant and/or traceable to the Offering Documents for the Company's IPO and was damaged thereby.

23.     Defendant BrightView is a Delaware corporation with its principal executive offices located at 401 Plymouth Road, Suite 500, Plymouth Meeting, Pennsylvania.  Following the BrightView IPO, the Company's common stock began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "BV."

24.     Defendant Masterman was CEO and a Director of BrightView at all relevant times.  Defendant Masterman signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant John A. Feenan ("Feenan") was BrightView's Executive Vice President and Chief Financial Officer ("CFO") at all relevant times.  Defendant Feenan signed or authorized the signing of the Registration Statement filed with the SEC.

26.     The Defendants referenced above in ¶¶ 24-25 are sometimes referred to herein collectively as the "Individual Defendants."

27.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions

{00321354;1 }

with the Company, and their access to material information available to them but not to the public, the Individual Defendants did not possess reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

28.    BrightView was founded in 1939 and is headquartered in Plymouth Meeting, Pennsylvania. The Company provides commercial landscaping services in the United States, and operates through two segments—Maintenance Services and Development Services.

29.    The Maintenance Services segment delivers a suite of recurring commercial landscaping services, including mowing, gardening, mulching and snow removal, water management, irrigation maintenance, tree care, golf course maintenance, and specialty turf maintenance. It serves corporate campuses and commercial properties, homeowners' associations, public parks, international hotels and resorts, airport authorities, municipalities, hospitals and other healthcare facilities, educational institutions, restaurants and retail, golf courses, and others. This segment's customer base includes approximately 13,000 office parks and corporate campuses, 9,000 residential communities, and 450 educational institutions.

30.    The Development Services segment offers landscape architecture and development services for new facilities and redesign projects. Its services include project design and management services, landscape architecture, landscape installation, irrigation installation, tree nursery and installation, pool and water features, sports field, and other services.

{00321354;1 }

31.     On or around July 2, 2018, BrightView completed its IPO, in which the Company issued and sold 24,495,000 shares of common stock at an offering price of $22.00 per share, generating net proceeds of approximately $501.2 million after deducting underwriting discounts and commissions and other offering expenses.  The shares sold in the offering were registered under the Securities Act pursuant to the Registration Statement, which was declared effective by the SEC on June 27, 2018.  Pursuant to Rule 424(b)(4) under the Securities Act, BrightView additionally filed its final prospectus dated June 27, 2018 on Form 424B4 with the SEC on June 29, 2018, which provided material information concerning the Company in connection with the IPO.

### Materially False and Misleading Statements in and Omissions from the Offering Documents

32.     Throughout the Prospectus, BrightView repeatedly touted, *inter alia*, its long history with its commercial customer base, the enhanced predictability of its business model, its high renewal rate, and its "recurring," "stable," and "predictable" revenue, stating, in relevant part:

> We believe our commercial customer base understands the financial and reputational risk associated with inadequate landscape maintenance and considers our services to be essential and non-discretionary. ***This creates <u>recurring revenue</u> and <u>enhances the predictability of our business model</u>, as demonstrated by our landscape maintenance contract <u>renewal rate of approximately 85%</u> for each of calendar year 2016 and 2017.***

* * *

> ***Owing to the non-discretionary nature of landscape maintenance services for commercial customers and <u>our long history with many of our customers</u>, we have achieved a landscape maintenance contract <u>renewal rate of approximately 85%</u> for each of calendar year 2016 and 2017.***

* * *

*Recurring and Predictable Revenue Base*

***Our business model is** **inherently stable, predictable, and insulated** **from economic volatility due to several factors. The majority of our revenues are generated from maintenance services, which provide a** **highly predictable, recurring revenue stream** **with** **clear visibility into future performance.** Many of the commercial landscape maintenance services which we provide are non-discretionary for our customers, who are focused on maintaining a perceived level of quality or desired environment at a given location. In addition, our services often represent a low percentage of the overall expense associated with the upkeep of properties we serve. **The predictability of our platform is further enhanced by compelling contract renewal rates.** Our focus on systematically delivering our services locally has resulted in a **landscape maintenance contract** **renewal rate of approximately 85%** **for each of calendar year 2016 and 2017**.*

(Emphases added).

33.    The foregoing statements were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts they were duty-bound to disclose in the Offering Documents concerning the Company's business, operational and compliance policies.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) a material portion of BrightView's contracts were underperforming and/or represented undesirable costs to the Company; (ii) as a result of the foregoing, BrightView would implement the Managed Exit strategy to end its low margin and non-profitable contracts with customers; (iii) the Managed Exit strategy would negatively impact BrightView's future revenue throughout 2018, and would continue to do so well into fiscal year 2019; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

34.    According to the Prospectus, BrightView relied on its customer contracts for the success of its business, and therefore was sensitive to the risk that it may not be able to renew certain contracts.  For example, the Prospectus stated, in relevant part:

{00321354;1 }

***Our business success depends on our ability to preserve long-term customer relationships.***

Our success depends on our ability to retain our current customers, renew our existing customer contracts and obtain new business. Our ability to do so generally depends on a variety of factors, including the quality, price and responsiveness of our services, as well as our ability to market these services effectively and differentiate ourselves from our competitors. We largely seek to differentiate ourselves from our competitors on the basis of high levels of service, breadth of service offerings and strong relationships and may not be able to, or may choose not to, compete with certain competitors on the basis of price. There can be no assurance that we will be able to obtain new business, renew existing customer contracts at the same or higher levels of pricing or that our current customers will not cease operations, elect to self-operate or terminate contracts with us.

With respect to our Maintenance Services segment, we primarily provide services pursuant to agreements that are cancelable by either party upon 30-days' notice. Consequently, our customers can unilaterally terminate all services pursuant to the terms of our service agreements, without penalty.

(Emphasis in original).

35.     The foregoing risk disclosure was materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts they were duty-bound to disclose in the Offering Documents concerning the Company's business, operational and compliance policies.   Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) a material portion of BrightView's contracts were underperforming and/or represented undesirable costs to the Company; (ii) as a result of the foregoing, BrightView would implement the Managed Exit strategy to end its low margin and non-profitable contracts with customers; (iii) the Managed Exit strategy would negatively impact BrightView's future revenue throughout 2018, and would continue to do so well into fiscal year 2019; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

36.    The Prospectus also provided merely generic, boilerplate representations related to BrightView's risk of facing undesirable contract costs, stating, in relevant part:

> ***If we are unable to accurately estimate the overall risks, requirements or costs when we bid on or negotiate contracts that are ultimately awarded to us, we may achieve lower than anticipated profits or incur contract losses.***
>
> A significant portion of our contracts are subject to competitive bidding and/or are negotiated on a fixed- or capped-fee basis for the services covered. Such contracts generally require that the total amount of work, or a specified portion thereof, be performed for a single price irrespective of our actual costs. If our cost estimates for a contract are inaccurate, or if we do not execute the contract within our cost estimates, then cost overruns may cause the contract not to be as profitable as we expected or could cause us to incur losses.

(Emphasis in original).

37.    The foregoing risk disclosure was materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts they were duty-bound to disclose in the Offering Documents concerning the Company's business, operational and compliance policies.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) a material portion of BrightView's contracts were underperforming and/or represented undesirable costs to the Company; (ii) as a result of the foregoing, BrightView would implement the Managed Exit strategy to end its low margin and non-profitable contracts with customers; (iii) the Managed Exit strategy would negatively impact BrightView's future revenue throughout 2018, and would continue to do so well into fiscal year 2019; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**The Truth Begins to Emerge**

38.    On August 8, 2018, after market-close, BrightView issued a press release announcing its financial and operating results for the third quarter of 2018, ended June 30, 2018.

Despite reporting "strong third quarter results" and "record revenues," the Company reported that "[r]evenues from the Development Services segment declined 5.7%" compared to the prior year "due to winding down production on certain large projects that reached substantial completion during the quarter, coupled with the timing of commencing work on new projects." Additionally, the Company reported net loss on a GAAP basis of $1.4 million compared to net income of $15.4 million for the third quarter of fiscal 2017, "primarily driven by an increase in equity-based compensation costs incurred in connection with our IPO and other one-time IPO expenses." The Company also reported EPS loss of $0.02 compared to EPS gain of $0.20 for the same quarter 2017.

39.    On August 9, 2018, BrightView filed its quarterly report for the same period with the SEC, reiterating the results previously announced in its earlier press release. Therein, the Company disclosed that its Maintenance Services revenue was negatively impacted by its "Managed Exit" strategy. The Managed Exit strategy was BrightView's purported corporate strategy to allow certain "***underperforming contacts***" to expire upon maturity or renegotiate the contracts to provide the Company with more favorable terms. Critically, this was the first time the Company disclosed that it held "underperforming" customer contracts.

40.    On this news, BrightView common stock fell $2.30 per share, or over 10%, to close at $19.90 per share on August 9, 2018, on exceptionally heavy trading volume. This represented a decrease of nearly 10% from the IPO price. BrightView common stock continued to fall by an additional $3.53 per share over the following three trading days to close at a low of $16.37 per share on August 14, 2018, or approximately 25.6% below the IPO price.

41.    The extent of the Company's "underperforming contracts" was further revealed on November 27, 2018, when BrightView issued a press release reporting its financial and

{00321354;1 }

operating results for the fourth quarter and fiscal year. Therein, the Company revealed that for the fourth quarter and full year, its Managed Exits offset its Maintenance Services revenue by 2.6% and 1.6%, respectively. Additionally, BrightView disclosed that its Managed Exits strategy would result in a decline in revenue of $15 to $25 million over the course of full year fiscal 2019.

42.    The following day, BrightView filed its annual report for the fiscal year ended September 30, 2018 with the SEC, reiterating the financial and operating results reported in its earlier press release. The Company elaborated on the extent of its underperforming contracts, disclosing that Net Service revenues for the twelve months ended September 30, 2018 of $2,353.6 million, were negatively impacted "by a $23.1 million decrease as a result of the Company's managed exit strategy surrounding underperforming contracts ('Managed Exits')."

43.    On November 28, 2018, BrightView also hosted a conference call with investors and analysts to discuss the Company's financial and operating results. On that call, BrightView's Chief Executive Officer ("CEO") Andrew V. Masterman ("Masterman") disclosed that certain of the Company's contracts not only had "no margin", but in fact were "under water".

44.    Then, on February 7, 2019, BrightView issued a press release announcing its financial and operating results for the first quarter 2019, ended December 31, 2018. In the press release, Defendant Masterman attributed the Company's disappointing financial and operating results to, *inter alia*, the Company's "strategic Managed Exit initiative and other operating conditions that we highlighted in our guidance on our November 2018 earnings conference call, as well as a slow start to the season for our snow removal services." Additionally, the Company reported that total revenue was down compared to the same quarter in the prior year in both reporting segments; $392.5 million compared to $406.7 million for the same quarter 2018 in Maintenance Services, and $134.4 million compared to $145.2 million for the same quarter 2018

in Development Services.  Finally, EPS was at a loss of $0.09 for the period compared to a gain of $0.25 in the same quarter the prior year.

45.     On February 7, 2019, BrightView filed its quarterly report for the same period with the SEC, reiterating the results from its earlier press release. Moreover, the Company advised investors in that filing that the underperforming contracts part of the Managed Exit strategy accounted for a year-over-year quarterly decline of $10.8 million in landscape services revenues.

46.     Later that day, on February 7, 2019, the Company hosted a conference call with investors and analysts to discuss the Company's financial and operating results. On that call, Defendant Masterman discussed the Company's underperforming contracts subject to the Managed Exit strategy, stating in relevant part:

> Last year, we made a strategic decision to optimize our customer portfolio through a targeted Managed Exit initiative. We made this decision so that we could redirect our labor force from low-margin accounts to ones that add to the bottom line today and have potential for continued future growth*. In fiscal 2018, we exited $23.1 million in revenue from large, unprofitable accounts and small, limited-growth potential customers. The impact of this initiative on our revenue continues in fiscal 2019 with $10.8 million in the first quarter. We now expect to be near or slightly above the $25 million high end of our guidance for the full-year.* It is important for me to emphasize that servicing long-term profitable accounts is the right decision for our business. We believe it will increase our operational efficiency, allow our account managers to retain our accretive customer relationships and thus improve the quality of our earnings moving forward.
>
> *          *          *
>
> …with the forecast we have right now at the high-end of the $25 million range, we see kind of a diminishing profile over the course of this upcoming fiscal year. We feel confident that we're going to continue to bleed this down kind of within that range we gave. However, Managed Exits are something which is a particular thrust and a particular program we went specifically at now. It is, however, going to be an ongoing process of continuing to make sure that the portfolio of accounts we manage have that positive impact within the branch. So within this year, the particular program will continue to diminish over the quarters.

47.    While Defendant Masterman acknowledged that certain of the Company's customer contracts have a "0-margin basis", one analyst was particularly irked that Defendant Masterman "dodged the question on what the competitive repercussions" would be as a result of the Company's Managed Exit strategy.

48.    Later on the call, Defendant Feenan iterated Defendant Masterman's statements, and warned investors that the Company "expect[s] that the material revenue impact from our Managed Exit initiative will continue in fiscal 2019, with a larger impact in the first half of the year."

49.    On this news, BrightView's common stock price declined $1.51 per share, or over 10%, to close at $13.23 per share on February 7, 2019, representing a decline of nearly 40% from the IPO price.  The price of BrightView's common stock continued to fall by an additional $0.48 per share, or 3.6%, to close at a low of $12.75 per share on February 8, 2019, representing a total decline of 42% from the IPO price.

50.    As of the date of this Complaint, BrightView's common stock price has fallen approximately 32.8% below the IPO price.

51.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of BrightView's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired BrightView common stock in its IPO or purchased BrightView common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO and were damaged thereby (the "Class").  Excluded

{00321354;1 }

from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable.  Since the IPO, the Company's securities have actively traded on NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by BrightView or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)      Whether the Securities Act was violated by Defendants as alleged herein;

    (b)      Whether Defendants omitted and/or misrepresented material facts;

    (c)      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d)      Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    (e)      Whether the price of BrightView securities were artificially inflated; and

    (f)      The extent of damage sustained by Class members and the appropriate measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**(Violations of Section 11 of the Securities Act against All Defendants)**

59.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

{00321354;1 }

60.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

61.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62.     BrightView is the registrant for the IPO.   Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

63.     As issuer of the shares, BrightView is strictly liable to Plaintiff and the Class for the misstatements and omissions.

64.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

65.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

66.     Plaintiff acquired BrightView shares pursuant and/or traceable to the Offering Documents for the IPO.

67.     Plaintiff and the Class have sustained damages.  The value of BrightView common stock has declined substantially subsequent to and due to Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act against Individual Defendants)**

68.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

{00321354;1 }

69.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

70.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of BrightView within the meaning of Section 15 of the Securities Act.  Individual Defendants had the power and influence and exercised the same to cause BrightView to engage in the acts described herein.

71.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

72.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 11, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Jacob A. Goldberg
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Email: jgoldberg@rosenlegal.com
          ghaklay@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, David Speiser, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Brightview Holdings, Inc. ("Brightview" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Brightview securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Brightview securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Brightview securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party on behalf of a class under the federal securities laws.

See Attachment A

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed:  **April 08, 2019**
                  **(Date)**

*David Speiser*

**(Signature)**

**(David Speiser)**

Attachment A to David Speiser Certification

Speiser v. Epstein, et al, 16-CV-2037 (D. COL.)

Speiser v. Blue Apron Holdings, Inc. et al, 1:17-CV-6517 (S.D.N.Y.)

Speiser v. Sigma Designs, et al, 3:18-CV-1670 (N.D. CA.)

**Brightview Holdings, Inc. (BV)**                                                                     **Speiser, David**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 8/2/2018 | Purchase | 250 | $17.6700 |
| 9/26/2018 | Purchase | 250 | $16.0750 |
| 10/3/2018 | Purchase | 500 | $15.1350 |